UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00201-WYD

TAMMY L. EVANS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-403, 1381-83c. For the reasons stated below, this case is reversed and remanded for further factfinding.

Plaintiff was born in August 1969. (Transcript ["Tr."] 49, 52.) She completed the 11th grade and worked in the past as a loan officer, telemarketer, date entry operator, and at temporary jobs. (Tr. 72-91, 98.) Plaintiff initially alleged that she became disabled on September 15, 1998, when she was 29 years old, because of bipolar disorder, hepatitis C, and migraines. (*Id.* 66, 97.) Plaintiff subsequently amended her alleged onset date to May 25, 2002. (*Id.* 97, 471, Pl.'s Br., p. iii.)

Plaintiff's applications, filed in June 2002 and January 2003 (Tr. 49-54), were denied initially. (*Id.* 41-45.) Plaintiff did not appeal the initial denial of her first application. After her second application was filed, Plaintiff filed a timely request for a hearing. The Administrative Law Judge ["ALJ"] held a hearing on June 30, 2005. (*Id.* 446-66.)

In a decision dated August 1, 2005, the ALJ issued a decision granting Plaintiff a closed period of disability, from November 15, 2002 to March 15, 2004. (Tr. 15-28). Plaintiff appealed to this Court and the case was remanded for further proceedings. (*Id.* 470, 488-505.) Upon remand, a different ALJ held a supplemental hearing. (*Id.* 1069-1111.) In a decision dated November 16, 2007, the ALJ found that Plaintiff was disabled from November 15, 2002, to March 25, 2004, but at all other times relevant to the decision she was not disabled if she stopped substance abuse. (*Id.* 470-83.) Since this case was upon remand, the ALJ's November 16, 2007 decision was the "final decision" and judicial review in this Court is appropriate. 42 U.S.C. § 405(g).

II.   ANALYSIS

   A.   The ALJ's Decision

   The ALJ made the following findings:

   1.   Plaintiff had not performed substantial gainful activity since her alleged onset of disability date. (Tr. 473, Finding 2).

   2.   Plaintiff had severe impairments of hepatitis C, bipolar disorder, and substance abuse disorder, with associated mood and psychotic disorder. (*Id.*, Finding 3.)

   3.   Plaintiff's condition did not meet or equal the requirements of a listed impairment. (*Id.* at 475, Finding 4.)

4. Plaintiff was disabled between November 15, 2002, and March 25, 2004, because of the effects of interferon therapy, and her condition improved with that treatment. (*Id.* 475.)

5. At all other relevant time periods, Plaintiff, when she engaged in polysubstance abuse, was disabled. (Tr. 476-77, Findings 5, 6, and 7.) The ALJ found that if Plaintiff stopped abusing drug and alcohol abuse at all other relevant time periods, she would still have severe impairments, but could perform a full range of light work and have only moderate limitations (some difficulties with ability to perform defined tasks) in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; or to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 477, Finding 10.) The ALJ found that if Plaintiff stopped substance abuse during the relevant time periods, she could not perform her past relevant work as a loan officer, but she could perform other work, such as check cashier, registration clerk, and telemarketer, that exist in significant numbers in the economy. (Tr. 482-83, Findings 9-13.)

6. Plaintiff, absent substance abuse, was not disabled within the meaning of the Act during the time periods relevant to this case. (Tr. 483, Finding 14.)

B. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

    C.    <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

        1.    <u>Whether the ALJ Failed to Correctly Apply the Drug and Alcohol ["DAA"] Rules</u>

Plaintiff argues that the ALJ failed to correctly apply the DAA Rules as there was no showing that her diagnosed bipolar disorder, borderline personality disorder or psychotic/schizoaffective disorders were separate from her DAA abuse and a finding of "not material" was therefore required pursuant to *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002). She asserts that the ALJ erroneously followed the November 18, 2002 opinion of state agency physician Donald G. Glasco, M.D. who opined that if Plaintiff abstained from illegal drugs and alcohol, her bipolar illness can be stabilized and she could then perform certain types of work. (Tr. 330, 481.) She further argues that there was a question as to whether or not Dr. Glasco's opinion necessarily conflicted with Dr. Kron's opinion.

Further, she contends that even if her bipolar disorder could be stabilized, the opinion of Dr. Glasco did not address her psychotic/schizoaffective or borderline personality disorders. The opinion of Dr. Kron was the only one on this issue. She also argues that the ALJ misconstrued Dr. Ingram's opinion as supporting Dr. Glasco's proposition. Further, the ALJ accepted that Plaintiff was abstinent from polysubstance abuse during Dr. Ingram's, and others, evaluations, when the record and her testimony indicated that she was not. Finally, the record reflects that the ALJ was an "unhappy

-4-

warrior" on this issue, expressing that the rule requiring separation is wrong but then not making clear that he followed it in his decision.

Turning to my analysis, Congress has amended the Social Security Act to provide that "'[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (quoting 42 U.S.C. § 423(d)(2)(C)); *see also* 20 C.F.R. § 404.1535. "Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol." *Id.* (citing 20 C.F.R. § 416.935(b)(1)). The ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol and/or drugs, and then determine whether any or all of plaintiff's remaining limitations would be disabling. *Id.*

In *Drapeau*, the Tenth Circuit found that the ALJ's analysis of plaintiff's alcohol abuse was flawed because "the ALJ failed to determine whether plaintiff was disabled prior to finding that alcoholism was a contributing factor material thereto." *Id.* "The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C)." *Id.* (citing 20 C.F.R. § 416.935(a)). "He must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol or drugs." *Id.* (citing 20 C.F.R. § 416.935(b)(1)). If the claimant would still be found disabled if he or she stopped using drugs or alcohol, "then the alcohol [or drug] abuse is not a contributing factor material to the finding of

disability." *Id.* at 1214-1215. "If, however, the claimant's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability." *Id.* at 1215 (citing 20 C.F.R. § 416.935(b)(2)(i)).

Finally, in the *McGoffin* decision, the Tenth Circuit indicated that "shortly after the law was amended to provide that a claimant could not be disabled by substance abuse alone, the Social Security Administration sent out a teletype on applying the new law." *Id.*, 288 F.3d at 1253. "This teletype stated that '[w]hen it is not possible to separate the mental restrictions and limitations [imposed by drug and alcohol abuse] and the various other mental disorders shown by the record, a finding of 'not material' would be appropriate." *Id.* "In other words, the agency directed that if the effects of a claimant's mental illness could not be separated from the effects of substance abuse, the abuse would be found *not* to be a contributing factor material to the disability determination." *Id.*; *see also Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006).

In this case, the ALJ found at step two that the medical evidence "clearly indicate[s] that the claimant experienced ongoing psychologically based symptoms, but that her symptoms were worse when she engaged in abuse of alcohol and illegal drugs, as evidenced by her prior overdoses and suicide attempts." (Tr. 475.) Accordingly, he found that Plaintiff has the "severe impairment of bipolar disorder, and substance abuse disorder, with associated mood and psychotic disorder." (*Id.*) Related to that finding, the ALJ found that Plaintiff's condition showed significant improvement when she did not engage in substance abuse, as shown by the consultative examination of Dr. Ingram and the evaluation of Dr. Rosenthal. (*Id.* 474.) The ALJ noted that this was

consistent with the testimony of Plaintiff that she had abstained from drug use while undergoing interferon treatment for Hepatitis C but began using methamphetamine after that treatment ended. (*Id.*)

The ALJ also found that while Plaintiff's substance use impairment was not disabling at step three, she lacks the residual functional capacity ["RFC"] to sustain work activity throughout a normal work week if she engages in polysubstance abuse. (Tr. 475-76.) He further found that when she engages in such abuse, she is unable to perform her past relevant work or any other work. (*Id.* 476-77.) In other words, the ALJ found that Plaintiff is disabled when she engages in polysubstance abuse. I find no error with this analysis, and Plaintiff has not alleged any. Accordingly, I turn to the ALJ's determination as to whether Plaintiff would still be disabled if she stopped her polysubstance abuse.

The ALJ found that if Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities, and she would continue to have a severe impairment. (Tr. 477.) He stated that this was supported by both treating and examining sources, who noted that Plaintiff "continues to exhibit moderate psychologically based symptoms even during the periods of abstinence." (*Id.*) However, the impairments would not meet the Listings. (*Id.*)

The ALJ then addressed Plaintiff's RFC and found that the opinion of Dr. Glasco, the state agency reviewing psychiatrist, should be adopted regarding her mental RFC. (Tr. 481.) Based on that opinion, which the ALJ found was "well supported by the evidence of record, and by the observations of treating and examining sources", Plaintiff

"would have no more than moderate limitations in her mental functioning ability, when she abstains from polysubstance abuse." (*Id.*) The ALJ found that Dr. Ingram's November 2002 consultative examination supported his findings, which was rendered at a point in time when Plaintiff had abstained from illegal drug use for six months and when Plaintiff was only occasionally using alcohol. (Tr. 481.) The ALJ also stated that his findings were consistent with those of Dr. Kanan and Dr. Rosenthal's January 2003 assessment. (*Id.*)

The ALJ then found that with the moderate limitations he assessed, Plaintiff would be unable to perform her past relevant work that was highly skilled, even if she stopped the substance abuse. (Tr. 482.) She would, however, be able to perform semi-skilled jobs. (*Id.*) He concluded that if Plaintiff stopped the substance abuse, she would be capable of making a successful adjustment to work that exists in significant number of jobs in the economy, based on the testimony of the vocational expert. (*Id.* at 482-483.) Finally, he concluded that because Plaintiff would not be disabled if she stopped the substance abuse, her substance abuse is a contributing factor material to the determination of disability. Thus, she has not been disabled within the meaning of the Social Security Act at any time prior to November 15, 2002, or after March 25, 2004. (*Id.* at 483.)

The Commissioner asserts that the ALJ properly found both that Plaintiff was disabled during the relevant time periods and that her drug and alcohol abuse was a contributing factor material to that finding of disability. Specifically, it is argued as to the second prong of the DAA analysis that the record supported the ALJ's finding that Plaintiff, absent drug and alcohol abuse, retained the RFC to perform a range of light

work during the relevant time periods. I disagree. I think the record was very muddled on this issue and that a remand is appropriate on this issue.

The ALJ chose to rely on the opinion of a nonexamining state agency physician to support his finding that Plaintiff would not be disabled if she stopped her substance abuse. Specifically, he relied on the November 18, 2002 opinion of stage agency physician Dr. Glasco who opined that if Plaintiff abstained from illegal drugs and alcohol, her bipolar illness can be stabilized and she could then perform certain types of work. (Tr. 330.) However, Dr. Glasco did not examine Plaintiff. The Tenth Circuit has noted that the "'findings of a nontreating physician based upon limited contact and examination are of suspect reliability.'" *Drapeau*, 255 F.3d at 1214 (quoting *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)). If the ALJ relies heavily on opinions of an agency medical consultant that did not examine the claimant, those "opinions must themselves find adequate support in the medical evidence." *See Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. 2004).

The ALJ relied on several sources as supportive of his opinions. First, as stated previously, he relied on Dr. Ingram's November 2002 consultative examination. (Tr. 321-26.) However, Dr. Ingram stated that Plaintiff's bipolar disorder *would* interfere with her employment. (*Id.* 325.) Further, Dr. Ingram stated that if Plaintiff stayed faithfully in treatment and stopped taking drugs or alcohol, it would take up to a year to determine to what extent stabilization could be achieved. (*Id.*) While the ALJ acknowledged Dr. Ingram's opinion regarding the time it would take to stabilization, he found nonetheless that Dr. Ingram's observations clearly portray an individual with no more than moderate psychologically based limitations. I find that this is improper speculation

on the part of the ALJ. Dr. Ingram did not state that Plaintiff has only moderate impairments, and the ALJ was not entitled to make a medical judgment about what Dr. Ingram's findings meant. *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'") (emphasis in original) (quotation omitted). Accordingly, I find that the ALJ's reliance on Dr. Ingram's opinion to support Dr. Glasco's opinions is not supported by substantial evidence.

The ALJ also relied on Dr. Rosenthal's January 24, 2003 opinion where he gave Plaintiff a GAF of 60, indicative only of moderate symptoms (Tr. 388-89).[1] In doing so, the ALJ chose to give no weight to Dr. Rosenthal's assessment less than two months later in March 2003 that Plaintiff's depression was worse since being treated for HCV and that Plaintiff was unable to work for a period of 9 to 11 months or to an earlier assessment of Dr. Rosenthal that Plaintiff was unable to work consistently. (Tr. 432-35.) While the ALJ gave reasons for rejecting these assessments, I find that most of the reasons would apply equally to the report that the ALJ chose to give weight to. In other words, I see no valid reasons for the distinction in weight given to the three assessments.[2] Based on the foregoing, I also find that the ALJ's reliance on

---

[1] A GAF score of 51 to 60 "indicates 'moderate symptoms,' or 'moderate difficulty in social, occupational, or school functioning.'" *Roybal v. Astrue*, No. 06-4189, 2007 WL 1475276, at *1 (10th Cir. 2007) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition (2000)).

[2] For example, the ALJ rejected those other assessments of Dr. Rosenthal based on the fact that he provided no function by function assessment of Plaintiff's limitations and because he did not address

Dr. Rosenthal's opinion to support the stage agency physician's opinion was not supported by substantial evidence.

Further, the ALJ failed to consider Dr. Kron's finding that in 2007 that Plaintiff's condition or treatment would cause her to miss work more than four days of work per months, and his statement that it was unclear whether Plaintiff's problems were attributable to her substance abuse or a non-substance related psychiatric disorder. (Tr. 1066-67.) From this, it could be inferred that Dr. Kron, Plaintiff's treating physician in 2007, felt it was not possible to separate Plaintiff's substance abuse from her impairments. The ALJ erred in not considering this, as the *McGoffin* opinion makes it clear that this is a proper consideration. I thus find that the record was not adequately developed on this issue.[3]

---

the effects of Plaintiff's ongoing substance abuse on her functioning. (Tr. 482.) However, the same arguments apply equally to the January 2003 assessment that the ALJ relied on. *See Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985) ("we cannot agree with the ALJ's summary rejection of these reports as based on inadequate findings when they are comparable to those reports the ALJ found sufficiently detailed "); *Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. 1999) ('[i]n evaluating plaintiff's testimony and comparing it with 'prior statements and other evidence,' . . ., the ALJ was selectively choosing from the record those statements he wished to rely on without properly considering all the evidence. . . . [w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review"). Further, if the ALJ believed that a function by function assessment was necessary to determine whether Dr. Rosenthal's statements about Plaintiff being disabled were supported, he should have contacted Dr. Rosenthal to obtain one. *McGoffin*, 288 F.3d at 1252; *see also Maes v. Astrue*, 522 F.3d 1093, 1098 (10th Cir. 2008). The same is true as to the ALJ's finding that Dr. Rosenthal's disability assessments were inadequate because he did not address the effects of Plaintiff's ongoing substance abuse—if this is true there was a duty to explore this issue with Dr. Rosenthal.

[3] While the Commissioner makes arguments as to why Dr. Kron's opinion properly was not considered, *i.e.*, that Dr. Kron treated Plaintiff for a very limited period of time and only when Plaintiff was using drugs and alcohol, the decision must be based on the reasons given by the ALJ or the Appeals Council, and must stand or fall on this basis. *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985) ("neither the ALJ, nor the Appeals Council cited this [argument made by the Commissioner] as a reason for denying benefits to Knipe, and we therefore should not uphold the agency's denial of benefits on this basis).

The state agency physician also only addressed bipolar disorder. However, Plaintiff was diagnosed with impairments other than bipolar disorder, including a psychotic disorder, schizoaffective disorder, and borderline personality disorder. (Tr. 564-66, 983-86, 1005, 1063.) The ALJ appeared to find that Plaintiff's mood disorder and psychotic disorder were associated with her substance abuse. However, this was a medical judgment that the ALJ was not entitled to make, and this must be assessed on remand. If these other disorders are severe, the record was inadequate to support the DAA finding as there was no assessment in the record as to whether Plaintiff would be disabled due to these impairments if she stopped substance abuse. This also needs to be developed on remand. *See Salazar*, 468 F.3d at 623-24 ("Ms. Salazar argues, and we agree, that the ALJ misapplied the law when he failed to consider her borderline personality disorder . . . . It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less. . . . What is particularly troublesome about the ALJ's failure to consider Ms. Salazar's borderline personality disorder is that it may account for her abuse of drugs and alcohol, as well as her suicidal conduct and self-mutilation").

I also note that three treating physicians, including Dr. Rosenthal, Dr. Kron and Dr. Gamblin, all opined that Plaintiff was unable to work. None of them was asked by the ALJ whether they believed that if Plaintiff stopped substance abuse, she would not be disabled. Instead, the ALJ relied only on an opinion of a nonexamining state physician on that issue. Thus, it is uncertain whether there was evidence in the record that supported the state agency physician's finding in this regard. Further, the treating

physicians as well as the state agency physician were never asked to render an opinion as to whether it was possible to separate Plaintiff's substance abuse from her impairments. I also find that the record was not adequately developed on this issue.

Further, I do not believe that the ALJ properly weighed the opinions of the treating physicians. When an ALJ decides that a treating physicians' opinions are not dispositive and not entitled to controlling weight, that does not allow him to reject their opinions outright. *Langley*, 373 F.3d at 1120. Instead, their opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The ALJ's opinion did not reflect that he gave the treating physicians' reports deference and weighed them, or that he gave "any consideration of what lesser weight the opinion should be given or discussion of the relevant factors set out in [42 U.S.C.] § 404.1527."

Finally, I question whether the ALJ adequately developed the issue of whether Plaintiff really had stopped abusing drugs for the period that she was on interferon. The ALJ relied on Plaintiff's testimony on this issue, while also finding that she was not a credible witness. (Tr 480.) This is not consistent.

Based upon the foregoing, I find that the second prong of the DAA analysis is not supported by substantial evidence, and must be reassessed on remand.

  2.  <u>Whether the ALJ Erred at Step-Two</u>

Plaintiff argues that the ALJ erred in failing to consider the following impairments severe: cervical cancer/hysterectomy and other diagnosed mental impairments of psychosis, psychotic disorder, NOS, schizoaffective disorders, and a borderline personality disorder with accompanying suicide attempts. I note that case law

-13-

prescribes a very limited role for step two analysis." *Lee*, 2004 WL 2810224, at *2. "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id*. (quoting *Langley*, 373 F.3d at 1116).

I first address the mental impairments. As stated earlier, the ALJ found that Plaintiff has severe impairments of bipolar disorder and substance abuse disorder, with associated mood and psychotic disorder. (Tr. 473). From this, although not clear, the ALJ appeared to find that Plaintiff's mood and psychotic disorders were only associated with her substance abuse disorder. As stated in the previous section, this is not supported by substantial evidence as the ALJ made an improper medical judgment about this. Further, he did not explain how he reached this finding. Accordingly, this needs to be assessed on remand.

As to Plaintiff's cervical cancer/hysterectomy, the ALJ found that this condition did not cause functional limitations for more than 12 months. (Tr. 475.) Plaintiff asserts that the cervical cancer was identified as early as February 15, 2006. (*Id*. 572, 667). She was treated for abdominal pain on January 31, 2007 following a complete hysterectomy and prescribed Oxycodone on February 5, 2007. (*Id*. 555). Thus, as Plaintiff argues, it would appear as though the condition and its symptoms were present for a year, although the severity of the abdominal pain may have varied during that time. This also should be reassessed on remand.

3. <u>Whether the ALJ Failed to Properly Determine the Claimant's RFC</u>

I also agree with Plaintiff that her RFC needs to be reassessed on remand. First, as noted above, I find that the ALJ did not conduct a proper DAA analysis and did not properly evaluate whether certain of Plaintiff's impairments were severe. When these issues are properly weighed, they may well impact the RFC. Further, on remand, the ALJ must weigh all of Plaintiff's impairments in combination. Plaintiff asserts in that regard that the combined physical effects of HCV should be considered, as well as her mood swings, schizoid and borderline personality traits, and migraines headaches and related symptoms. I agree that these must properly be considered on remand.

As to her HCV, while the Commissioner determined that HCV was disabling only when Evans started Interferon treatment on November 15, 2002, Plaintiff points out that on several occasions before that time period she was vomiting blood and/or had blood in the stool. (Tr. 195-198, 253, 415, 844-45, 852, 857-859.) She also complained of fatigue during this period, which must properly be considered. (*id*. 254-56, 347-48.) Finally, Plaintiff's last job ended in May 2002, which only lasted a month or so. (*Id*. 67, 363.). On remand the ALJ must consider whether this job ended due to Plaintiff's impairments and if so, address the impact of this on Plaintiff's ability to work.

Also related to Plaintiff's work, I agree with Plaintiff that the record reflects that she might maintain employment only when in a mania (Tr. 322, 430, 1086-87) or if working from home when she is able to (*id*. 313, 543, 1085). The ALJ must consider these issues on remand. There is also evidence of suicidal behavior which must be considered. Finally, the ALJ must consider the effects of Plaintiff's medications, which at worst have rendered her suicidal (*id*. 1096) or at best, appear to make her tired (*id*.)

Taking into account the full extent of Plaintiff's impairments and related symptoms and all of the above issues, the ALJ must on remand determine whether Plaintiff is able to maintain full-time employment and "*hold* whatever job [s]he finds for a significant period of time.'" *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (emphasis in original) (quotation omitted). RFC for full time work means work "on a regular and continuing basis, . . . that is, '8 hours a day, for 5 days a week, or an equivalent work schedule,'" and it must be shown that the Plaintiff can "'respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting.'" *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (quotations omitted). In considering Plaintiff's RFC, the ALJ must also keep in mind that "sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).[4]

### 4. Whether the ALJ Met His Burden at Step Five

All of the issues discussed above that must be addressed on remand may impact the step five analysis, and require that it be reassessed on remand. Further, I agree with Plaintiff that the ALJ's step five analysis appears not to be supported by substantial evidence. First, the ALJ first found that Plaintiff could not perform her past relevant work ["PRW"]. (Tr. 482.). That PRW included work as a telemarketer. (*Id.* 98). However, the then found that Plaintiff could perform telemarketing at step five. (*Id.* 483.) This was not adequately explained.

---

[4] In this case, the ALJ appeared to find that Plaintiff's ability to go to church and engage in activities such as gardening, house work and walking her dogs showed that she was able to function pretty well. (Tr. 480.) However, none of these activities are necessarily indicative of whether Plaintiff could hold full time work for a sustained period.

Further and more importantly, the hypothetical question given to the vocational expert did not include all of the impairments found by the ALJ, including moderate restrictions in the ability to maintain regular attendance and be punctual within customary limits. (*Id.* 477, 1096.) This was also error. *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) ("'testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision'"). This was particularly troubling in this case since the vocational expert admitted that if Plaintiff were to miss even four days a week from work a month, that would eliminate any work she could do. (*Id.* 1105.) On remand, the hypothetical question must include all of the impairments borne out by the record.

III. CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated March 31, 2009

                BY THE COURT:

                s/ Wiley Y. Daniel
                Wiley Y. Daniel
                Chief United States District Judge